1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                      **FOR THE DISTRICT OF ARIZONA**

8

9    Jesse Fox,                                    No. CV-25-00290-TUC-JGZ

10                  Plaintiff,                      **ORDER**

11   v.

12   DriveTime Automotive Group Incorporated,

13                  Defendant.

14           On June 12, 2025, Defendant DriveTime Car Sales Company, LLC[1] removed this

15   action from Pima County Superior Court. (Doc. 1.) Pending before the Court is Plaintiff

16   Jesse Fox's Motion to Remand to State Court and Request for Sanctions Pursuant to 28

17   U.S.C. § 1447(c). (Doc. 5.) The Motion is fully briefed. (*See* Docs. 7, 8.)[2] For the following

18   reasons, the Court will grant Plaintiff's Motion and remand this action to Pima County

19   Superior Court.

20           **I.      Removal**

21           Generally, a defendant may remove to federal court "any civil action brought in a

22   State court of which the district courts . . . have original jurisdiction." 28 U.S.C. § 1441. A

23   federal district court has original subject matter jurisdiction over a case involving a federal

24

25   ---
     [1]  Defendant asserts that the only named Defendant in Plaintiff's Complaint, DriveTime
26   Automotive Group, Inc., is not an appropriate party to this action because Plaintiff
     contracted with DriveTime Car Sales Company. (Doc. 1 at 1 n.1.) Plaintiff does not dispute
27   that DriveTime Car Sales Company is the proper defendant in this case. (Doc. 5 at 1
     (naming DriveTime Car Sales Company as Defendant).)
28   [2]  On July 11, 2025, Plaintiff filed a supplemental reply that largely repeats arguments
     made in his earlier briefing. (*See* Doc. 9.) The attached email from Defendant's counsel
     with incomplete text does not affect the Court's analysis. (*See* Doc. 9-1.)

question—i.e., any claim arising under the United States Constitution, federal law, or treaty—or when the parties have complete diversity of citizenship and the amount in controversy is over $75,000. *Id.* §§ 1331, 1332. "[T]he well-pleaded complaint rule 'provides that federal [question] jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (quoting *In re NOS Commc'ns, MDL No. 1357*, 495 F.3d 1052, 1057 (9th Cir. 2007)). "[T]he plaintiff is 'the master of the complaint' and may 'avoid federal jurisdiction by relying exclusively on state law.'" *Id.* (quoting *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1106 (9th Cir. 2000)). There is a "strong presumption against removal jurisdiction[, which] means that the defendant always has the burden of establishing that removal is proper, and that the court resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (internal quotation marks omitted) (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)).

Here, Defendant bases its removal request on federal question jurisdiction[3] because "Plaintiff alleges violations of the Fair Debt Collections Practice Act, 15 U.S.C. § 1692, *et seq.* ["FDCPA"]." (Doc. 1 at 1.) Plaintiff argues his Complaint pleads only state law claims for breach of contract, quiet title, and violations of Arizona consumer protection statutes, and that the Complaint briefly references the FDCPA for comparison, but "no federal claim is asserted." (Doc. 5 at 2.) Defendant argues the FDCPA claim is listed "alongside the rest of Plaintiff's claims (which are not set out anywhere else)," and Plaintiff discussed alleged FDCPA violations in emails sent to a non-party entity, Bridgecrest. (Doc. 7 at 3–4.)

Defendant fails to meet its burden of establishing that removal is proper on the basis of federal question jurisdiction.[4] First, contrary to Defendant's characterization, it is far

---

[3]  Diversity jurisdiction appears to be lacking as Plaintiff's Complaint states it is seeking less than $50,000 in damages and Plaintiff alleges the parties are not diverse. (Doc. 1-1 at 5; Doc. 5 at 3.) In any event, Defendant has not invoked diversity jurisdiction as a basis for removal. (Doc. 7 at 3 n.3); *see Hunter*, 582 F.3d at 1042 ("[T]he defendant always has the burden of establishing that removal is proper.").
[4]  Because the Court finds remand appropriate on this basis, the Court does not address Plaintiff's alternative arguments regarding bad faith and procedural defects. (*See* Doc. 5 at 4.)

1   from clear that each of the eight paragraphs in the Complaint's section entitled

2   "APPLICABLE LAW SUPPORTING CLAIMS" allege distinct causes of action, or that

3   Plaintiff intended as much when he filed the Complaint. (*See* Doc. 1-1 ¶¶ 24–31.) The

4   Arizona Supreme Court's pro se "Civil Complaint" form, which Plaintiff used to file his

5   Complaint, does not provide an obvious location for numerically listing causes of action,

6   and "applicable law supporting claims" does not necessarily equate to a legal claim or

7   cause of action itself. (*See* Doc. 1-1 at 4–10.) Moreover, the form provides unlabeled blank

8   spaces on the first page next to the parties' names and case number. (*Id.* at 4.) Thus, it was

9   understandable, if not reasonable, for Plaintiff to list his causes of action in the unlabeled

10  blank spaces on the first page and to use the "APPLICABLE LAW SUPPORTING

11  CLAIMS" section to list all legal authority that may support his claims. (Doc. 1-1 at 4, 6,

12  9; Doc. 5 at 2–3 ("The FDCPA is mentioned only to illustrate how Arizona consumer laws

13  mirror federal standards.").) As master of the complaint, Plaintiff is entitled to rely

14  exclusively on state law and has chosen to do so here. *See Balcorta*, 208 F.3d at 1106;

15  (Doc. 5 at 3); (Doc. 1-1 at 4 (listing state-law claims for "Breach of Contract," "Quiet

16  Title," and "Violation of Arizona Consumer Protection")).

17  Moreover, Defendant's characterization of Plaintiff's claims is unconvincing.[5] For

18  example, Defendant asserts Plaintiff alleges a claim for breach of contract in the

19  "APPLICABLE LAW SUPPORTING CLAIMS" section, but the words "breach of

20  contract" are not included in that section; rather, "Breach of Contract" appears on the first

21  page of the Complaint. (Doc. 1-1 at 1, 6, 9, ¶¶ 24–31.) Also, Defendant does not mention

22  Paragraph 25, which states, "Restatement of Contracts § 205 – Reinforces the duty of good

23  faith and fair dealing in all contractual performance." (*Id.* ¶ 25.) If Plaintiff intended each

24  paragraph of the "APPLICABLE LAW SUPPORTING CLAIMS" section to allege a cause

25  of action, then the Complaint alleges one violation of the obligation of good faith and fair

26  dealing under A.R.S. § 47-1304, and one violation of the obligation of good faith and fair

27

28  [5]  Defendant argues the Complaint "alleges eight claims for relief," apparently corresponding to the eight paragraphs in the "APPLICABLE LAW SUPPORTING CLAIMS" section, but then lists only seven claims. (Doc. 7 at 1–2.)

1  dealing under Restatement of Contracts § 205. It is more likely that Plaintiff intended to

2  list a provision of the Restatement (and A.R.S. § 47-1304) as support for his claim that

3  Defendant is in breach of contract, for violating its obligation of good faith and fair dealing.

4  Neither are the other legal authorities cited in this section clearly causes of action. In

5  Paragraph 31, Plaintiff cites "UCC Article 9," and "ARS § 47-9101." (Doc. 1-1 ¶ 31.)

6  A.R.S. § 47-9101 provides in full, "This chapter may be cited as Uniform Commercial

7  Code–Secured Transactions." Apparently, Plaintiff intended to assert a claim for violations

8  of the UCC. (*See* Doc. 8 at 7 ("Plaintiff's core claims arise under Arizona law . . . and

9  violations of the UCC . . . .").) However, citing to A.R.S. § 47-9101 does not clarify what

10  cause of action Plaintiff is asserting, other than some violation of the UCC's provisions

11  governing secured transactions.

12        Second, Plaintiff's emails to Bridgecrest do not establish Plaintiff's intent to assert

13  a cause of action under the FDCPA against DriveTime in the Complaint. In the first email,

14  Plaintiff stated that, "[c]ontinued contact . . . may be reported as a violation of the

15  [FDCPA]." (Doc. 1-1 at 32.) In the second email, Plaintiff stated, "[y]our statement that I

16  am 'In possession of our vehicle' [c]onstitutes blatant misrepresentation and may raise to

17  the level of fraudulent debt collection under both Arizona law and the [FDCPA], 15 U.S.C.

18  1692 et seq." In both emails, Plaintiff mentions the FDCPA in reference to only

19  Bridgecrest's conduct, not Defendant's. The emails are thus insufficient to support an

20  inference that Plaintiff intended to bring a FDCPA claim against DriveTime.

21        Third, the Complaint itself mentions the FDCPA just once,[6] without discussing the

22  elements of a FDCPA cause of action or applying facts pleaded in the Complaint to those

23  elements. *See Hunter*, 582 F.3d at 1042. In the Complaint's "Statement of Facts and

24  ---
   [6] Moreover, the FDCPA provision Plaintiff cites, 15 U.S.C. § 1692(c), a subsection of the
25  Act's Congressional findings and declaration of purpose titled "Available non-abusive
   collection methods," states in full: "Means other than misrepresentation or other abusive
26  debt collection practices are available for the effective collection of debts." Clearly, this
   provision of the Act does not create a cause of action. *Compare* 15 U.S.C. § 1692(c), *with*
27  15 U.S.C. § 1692k (creating a civil cause of action against debt collectors who violate a
   provision of the FDCPA); *see also Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804,
28  808 (1986) ("[T]he vast majority of cases brought under the general federal-question
   jurisdiction of the federal courts are those in which federal law creates the cause of
   action.").

Breach," "Injuries," and "Demand for Relief" sections, Plaintiff discusses facts relevant to breach of contract and requests damages for breach and quiet title but does not reference the FDCPA. (Doc. 1-1 at 5–10.) And, after the Complaint's lone reference to the FDCPA in Paragraph 27, Plaintiff cites an Arizona statute and states, "Arizona's version of fair debt collection standards mirrors federal protections, barring misrepresentation of creditor identity." (Doc. 1-1 ¶ 28); *see Moussa v. County of Pima*, No. CV1700523TUC, 2018 WL 1973173, at \*2 (D. Ariz. Mar. 5, 2018) ("References to federal law within a state law cause of action do not turn the claim into a federal cause of action."), *report and recommendation adopted*, No. CV1700523TUC, 2018 WL 1963680 (D. Ariz. Apr. 26, 2018). In sum, Plaintiff's position that he did not intend to plead a FDCPA claim is supported by the Complaint, and to the extent the Complaint's mention of the FDCPA is ambiguous, the Court resolves the ambiguity in favor of remand. *Hunter*, 582 F.3d at 1042.

## II.    Request for Fees

"If removal is found to be improper, a court that remands a case to state court may 'require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.'" *Moussa*, 2018 WL 1973173, at \*4 (quoting 28 U.S.C. § 1447(c)). But "fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Gardner v. UICI*, 508 F.3d 559, 561 (9th Cir. 2007) (citing *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005)).

Because Plaintiff's Complaint referenced a federal statute and the Arizona Supreme Court's pro se civil complaint form is ambiguous regarding where to include causes of action, the Court finds Defendant's removal had a reasonable basis and fees are not warranted. *See Moussa*, 2018 WL 1973173, at \*5.

Accordingly,

**IT IS ORDERED:**

1.    Plaintiff's Motion to Remand to State Court (Doc. 5) is **granted**. The Clerk of Court is directed to **remand** this action to Pima County Superior Court and close its file in this action.

2.     If Plaintiff changes his position and later seeks to assert a claim against DriveTime under the FDCPA, through an amended pleading or otherwise, nothing in this Order prevents Defendant from filing for removal again in accordance with 28 U.S.C. § 1446(b)(3). *See Reyes v. Dollar Tree Stores, Inc.*, 781 F.3d 1185, 1188 (9th Cir. 2015) ("A successive removal petition is permitted . . . when subsequent pleadings or events reveal a new and different ground for removal.").

Dated this 16th day of July, 2025.

_____
Jennifer G. Zipps
Chief United States District Judge